1

THE HONORABLE JOHN C. COUGHENOUR

2

3

4

5

6

7 UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
8 AT SEATTLE

9 RINKY DINK, INC.,

10                                    Plaintiff,          No. 2:13-cv-01347-JCC

11        v.                                              DEFENDANT'S MOTION TO DISMISS
                                                          THE COMPLAINT
12 ELECTRONIC MERCHANT SYSTEMS INC.,
                                                          NOTE ON MOTION CALENDAR
13                                    Defendant.          OCTOBER 25, 2013

14                                                        ORAL ARGUMENT REQUESTED

15

16

17

18

19

20

21

22

23

24

25

26

DEFENDANT'S MOTION TO DISMISS THE COMPLAINT
Case No. 2:13-cv-01347-JCC

FOSTER PEPPER PLLC
1111 THIRD AVENUE, SUITE 3400
SEATTLE, WASHINGTON 98101-3299
PHONE (206) 447-4400  FAX (206) 447-9700

# TABLE OF CONTENTS

*Page*

INTRODUCTION ..................................................................................................1

FACTUAL ALLEGATIONS ..................................................................................1

STANDARD OF REVIEW ....................................................................................2

I.  PLAINTIFF'S CLAIMS MUST BE DISMISSED BECAUSE THEY ARE
    PREEMPTED BY THE TCPA.........................................................................3

    A.  The TCPA impliedly preempts the application of the WADAD to
        interstate business-to-business telephone solicitations because the scope of
        the TCPA indicates Congress' intent to occupy the legislative field......................4

    B.  The TCPA also impliedly preempts the application of the WADAD to
        interstate business-to-business telephone solicitations because an actual
        conflict exists. ...................................................................................................6

    C.  The FCC, which is entitled to *Chevron* deference, has indicated that the
        TCPA preempts state regulation of interstate telephone solicitation.......................8

    D.  Opinions from this district failing to find preemption did not involve
        business-to-business calling, which is not an area of traditional police
        power reserved to the states. ...............................................................................9

II.  RINKY DINK'S CLAIMS UNDER THE WADAD FAIL TO MEET THE
     CONSUMER PROTECTION ACT'S PUBLIC INTEREST REQUIREMENT. .............12

III. RINKY DINK'S REQUEST FOR TREBLE DAMAGES UNDER THE
     CONSUMER PROTECTION ACT SHOULD BE DISMISSED BECAUSE IT
     DOES NOT HAVE ACTUAL DAMAGES....................................................................15

CONCLUSION....................................................................................................16

DEFENDANT'S MOTION TO DISMISS THE COMPLAINT- i
Case No. 2:13-cv-01347-JCC

**FOSTER PEPPER PLLC**
1111 THIRD AVENUE, SUITE 3400
SEATTLE, WASHINGTON 98101-3299
PHONE (206) 447-4400  FAX (206) 447-9700

1

# TABLE OF AUTHORITIES

2

*Page(s)*

3

## CASES

4

*Abbouds' McDonald's LLC v. McDonald's Corp.,*
    No. 05-36032, 2006 U.S. App. LEXIS 17187 (9th Cir. July 7, 2006) ...................................14

5

6

*Abright v. Oliver,*
    510 U.S. 266 (1994)................................................................................................................2

7

*Altria Group, Inc. v. Good,*
    555 U.S. 70 (2008)................................................................................................................3

8

9

*Bell Atlantic Corp. v. Twombly,*
    550 U.S. 544 (2007)................................................................................................................2

10

*Campbell v. Seattle Engine Rebuilders,*
    75 Wn. App. 89, 876 P.2d 948 (1994) ..........................................................................12, 13

11

12

*Chamber of Commerce v. Lockyer,*
    No. 2:05-CV-2257, 2006 U.S. Dist. LEXIS 8324 (E.D. Cal. Feb. 27, 2006).....................5, 10

13

*Chesbro v. Best Buy Stores, L.P.,*
    705 F.3d 913, 918 (9th Cir. 2012) ........................................................................................8

14

*Chevron v. Natural Res. Def. Council, Inc.,*
    467 U.S. 837 (1984)................................................................................................................9

15

16

*County of Spokane v. Valu-Mart, Inc.,*
    69 Wn.2d 712, 419 P.2d 993 (1966) ....................................................................................11

17

18

*Crosby v. Nat'l Foreign Trade Council,*
    530 U.S. 363 (2000)................................................................................................................4

19

*Fid. Fed. Sav. & Loan Ass'n v. de la Cuesta,*
    458 U.S. 141 (1982)................................................................................................................4

20

21

*Free v. Bland,*
    369 U.S. 663 (1962)................................................................................................................4

22

*Goodyear Tire & Rubber Co. v. Whiteman Tire,*
    86 Wn. App. 732, 935 P.2d 628 (1997) ..........................................................................13, 14

23

24

*Hangman Ridge Training Stables, Inc. v. Safeco Title Ins. Co.,*
    105 Wn.2d 778, 719 P.2d 531 (1986) ..................................................................................12

25

*Hickey v. Voxernet LLC,*
    887 F. Supp. 2d 1125 (W.D. Wash. 2012).............................................................................11

26

DEFENDANT'S MOTION TO DISMISS THE COMPLAINT- ii
Case No. 2:13-cv-01347-JCC

*Hovila v. Tween Brands, Inc.*,
  C09-0491RSL, 2010 WL 1433417 (W.D. Wash. Apr. 7, 2010) .........................................9, 11

*Indem. Corp. v. Weisman*,
  803 F.2d 500 (9th Cir. 1986) .........................................................................................3

*Jones* v. *Rath Packing Co.*,
  430 U.S. 519 (1977).............................................................................................3, 10

*Mason v. Mortgage Am.*,
  114 Wn.2d 842, 792 P.2d 142 (1990) ...........................................................................15

*Medtronic, Inc. v. Lohr*,
  518 U.S. 470 (1996) ..................................................................................................10

*Meilleur v. AT&T Inc.*,
  No. C11–1025 MJP, 2011 U.S. Dist. LEXIS 132473 (W.D. Wash. Nov. 16, 2011) .............11

*Mendocino Envtl. Ctr. v. Mendocino County*,
  14 F.3d 457 (9th Cir. 1994) .........................................................................................3

*Metropolitan Life Ins. Co. v. Massachusetts*,
  471 U.S. 724 (1985)....................................................................................................10

*Minnesota v. Carter*,
  525 U.S. 83 (1988) ....................................................................................................11

*NL Indus., Inc. v. Kaplan*,
  792 F.2d 896 (9th Cir. 1986) .........................................................................................3

*Pac. Northwest Life Ins. Co. v. Turnbull*,
  51 Wn. App. 692, 754 P.2d 1262 (1988) ......................................................................14

*Palmer v. Sprint Nextel Corp.*,
  674 F. Supp. 2d 1224 (W.D. Wash. 2009) .............................................................10, 11

*Paris Adult Theatre I v. Slaton*,
  413 U.S. 49 (1973).......................................................................................................10

*Patriotic Veterans, Inc. v. Indiana ex rel. Zoeller*,
  821 F. Supp. 2d 1074 (S.D. Ind. 2011) ...............................................................4, 5, 6, 9

*Ridgway v. Ridgway*,
  454 U.S. 46 (1981).......................................................................................................4

*Rinky Dink Inc. v. Radian Inc.*,
  2:03-cv-03936-TSZ........................................................................................................2

*Rinky Dink Inc. v. US Merchant Systems, LLC*,
  2:11-cv-01085-RSM .....................................................................................................2

DEFENDANT'S MOTION TO DISMISS THE COMPLAINT- iii
Case No. 2:13-cv-01347-JCC

FOSTER PEPPER PLLC
1111 THIRD AVENUE, SUITE 3400
SEATTLE, WASHINGTON 98101-3299
PHONE (206) 447-4400  FAX (206) 447-9700

*Rinky Dink v. Capital Advance Solutions, LLC,*
    2:13-cv-01347-JCC ................................................................................2

*Satterfield v. Simon & Schuster, Inc.,*
    569 F.3d 946 (9th Cir. 2009) ...........................................................8, 9

*Segal Co. v. Amazon,*
    280 F. Supp. 2d 1229 (W.D. Wash. 2003) .......................................14

*Sign-O-Lite Signs v. Delaurenti Florists,*
    64 Wn. App. 553, 825 P.2d 714 (1992) ...........................................15

*Skidmore v. Swift & Co.,*
    323 U.S. 134 (1944) ...........................................................................8

*St. Paul Fire & Marine Ins. Co. v. Updegrave,*
    33 Wn. App. 653, 656 P.2d 1130 (1983) .........................................15

*Ting v. AT & T,*
    319 F.3d 1126 (9th Cir. 2003) ..........................................................10

*United States v. Mead Corp.,*
    533 U.S. 218 (2001) ...........................................................................8

*Wells Fargo Bank of Texas NA v. James,*
    321 F.3d 488 (5th Cir. 2003) ..............................................................7

*Whistler Invs., Inc. v. Depository Trust & Clearing Corp.,*
    539 F.3d 1159 (9th Cir. 2008) ............................................................3

*Williams v. MCIMetro Access Transmission Servs.,*
    No. C08-82TSZ, Docket Nos. 42, 71, 74............................................5

### STATUTES

47 U.S.C. § 227(b)(1)(B) ...............................................................................4

47 U.S.C. § 227(f)(1) .....................................................................................4

47 U.S.C. § 227 (b)(2)(A) ..............................................................................7

RCW 19.86.090 ...........................................................................................15

RCW 46.71.070 ...........................................................................................12

RCW 80.36.530 ...........................................................................................13

Telephone Consumer Protection Act, 47 U.S.C.
    § 227 (the "TCPA") ............................................................... passim

DEFENDANT'S MOTION TO DISMISS THE COMPLAINT- iv
Case No. 2:13-cv-01347-JCC

**FOSTER PEPPER PLLC**
1111 THIRD AVENUE, SUITE 3400
SEATTLE, WASHINGTON 98101-3299
PHONE (206) 447-4400  FAX (206) 447-9700

Washington Automatic Dialing and Announcing Devices Act, RCW 80.36.400
("WADAD") ............................................................................................ passim

Washington Consumer Protection Act, RCW 19.86 ............................................1, 12

## OTHER AUTHORITIES

47 C.F.R. § 64.1200(a)(4)-(6), (b)(1)-(2) .................................................................7

137 Cong. Rec. S18781-02 .......................................................................................6

18 FCC Rcd 14014 (FCC 2003) ...........................................................................7, 8

Fed. R. Evid. 201 ......................................................................................................3

Federal Rule of Civil Procedure 2(b)(6) ..................................................................1

Rule 12(b)(6) ........................................................................................................2, 16

S. Rep. No. 102-178 (1991) ......................................................................................6

FOSTER PEPPER PLLC
1111 THIRD AVENUE, SUITE 3400
SEATTLE, WASHINGTON 98101-3299
PHONE (206) 447-4400  FAX (206) 447-9700

1

## INTRODUCTION

2   On the allegation of a single interstate phone call to its retail business, Plaintiff Rinky

3   Dink, Inc. filed a complaint seeking statutory penalties, treble damages, and status as a class rep-

4   resentative against Defendant Electronic Merchant Systems, Inc. ("EMS"), a Delaware Corpora-

5   tion with its principal place of business in Virginia. The Washington statute under which Rinky

6   Dink brings its claims, the Washington Automatic Dialing and Announcing Devices Act, RCW

7   80.36.400 ("WADAD"), regulates, among other areas, business-to-business phone calls, an area

8   preempted as to interstate calls by the Telephone Consumer Protection Act, 47 U.S.C. § 227 (the

9   "TCPA"), and accompanying federal regulations. Rinky Dink's claims directly conflict with the

10  TCPA, which permits business-to-business interstate telephone solicitation. The Washington

11  statute is therefore preempted under both field and conflict preemption.

12  Rinky Dink's claims also should be dismissed because while a violation of the WADAD

13  gives rise to a claim under the Washington Consumer Protection Act, RCW 19.86, its claims do

14  not meet the public interest test to establish a violation of that Act.

15  EMS therefore respectfully requests that the Complaint be dismissed under Federal Rule

16  of Civil Procedure 2(b)(6) on alternative grounds: (1) federal law preempts the WADAD as to

17  interstate business-to-business calls, which federal law allows; and, (2) both of Rinky Dink's

18  causes of action are based on the Consumer Protection Act, and don't meet the public interest

19  test for maintaining such claims.

20

## FACTUAL ALLEGATIONS

21  EMS is a Delaware corporation with its principal place of business in Alexandria, Virgin-

22  ia. (Compl. ¶ 2.1). EMS identifies merchants desiring to enter into merchant service agreements

23  with qualifying banks for the processing and management of retail point-of-service credit card

24  transactions. (Compl. ¶¶ 4.1, 4.2). EMS procures the qualified merchants to be included in the

25  bank's qualified merchant member program, assists those members in their participation in the

26  program and receives compensation for those services. EMS solely solicits and provides services

FOSTER PEPPER PLLC
1111 THIRD AVENUE, SUITE 3400
SEATTLE, WASHINGTON 98101-3299
PHONE (206) 447-4400  FAX (206) 447-9700

to businesses; it does not provide any individual services to consumers nor is there any related consumer aspect to its business.

Rinky Dink operates a pet supply store in Washington and is incorporated in Washington State, where it does business under the trade name "Pet Stop." (Compl. ¶ 2.1). In addition to running a pet store, Rinky Dink appears to be a professional class-action plaintiff in cases similar to this matter. Three of those cases have been filed in this Court: *Rinky Dink Inc. v. Radian Inc.*, 2:03-cv-03936-TSZ; *Rinky Dink Inc. v. US Merchant Systems, LLC*, 2:11-cv-01085-RSM; and *Rinky Dink v. Capital Advance Solutions, LLC*, 2:13-cv-01347-JCC. Plaintiff's counsel in this matter has represented it in all of these lawsuits.

Rinky Dink alleges that on May 22, 2012, EMS used an automatic dialing and announcing device to deliver a pre-recorded commercial solicitation message to Rinky Dink's business. (Compl. ¶ 4.5).  Based on this single interstate phone call, Plaintiff asserts two causes of action: (1) EMS violated the WADAD; and (2) by violating the WADAD, it also violated the Consumer Protection Act. Rinky Dink contends that EMS's call entitles it to $500 in statutory damages under the WADAD and it also appears to seek a second award of statutory damages of $500 under the Consumer Protection Act for the same call, as well as treble damages and reasonable attorneys' fees and costs. Plaintiff also seeks to certify a class of Washington businesses that allegedly received a telephone call from EMS containing a pre-recorded message with a commercial solicitation when the call was transmitted to a number with a Washington State area code. (Compl. ¶ 7.2).

## STANDARD OF REVIEW

To survive a Rule 12(b)(6) motion to dismiss, a complaint must include "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 547 (2007). When ruling on a motion to dismiss pursuant to Rule 12(b)(6), the Court must "accept the well-pleaded allegations of the complaint as true," *Abright v. Oliver*, 510 U.S. 266, 268 (1994), as well as all reasonable inferences that can be drawn from such allegations. *Mendocino*

DEFENDANT'S MOTION TO DISMISS THE COMPLAINT- 2
Case No. 2:13-cv-01347-JCC

FOSTER PEPPER PLLC
1111 THIRD AVENUE, SUITE 3400
SEATTLE, WASHINGTON 98101-3299
PHONE (206) 447-4400  FAX (206) 447-9700

1   *Envtl. Ctr. v. Mendocino County*, 14 F.3d 457, 460 (9th Cir. 1994); *NL Indus., Inc. v. Kaplan*,

2   792 F.2d 896, 898 (9th Cir. 1986). The Court may also consider any matter that is the subject of

3   judicial notice (Fed. R. Evid. 201), such as matters of public record, without converting it into a

4   motion for summary judgment. *Indem. Corp. v. Weisman*, 803 F.2d 500, 504 (9th Cir. 1986).

## ARGUMENT

### I.   Plaintiff's claims are preempted by the Federal TCPA.

The TCPA comprehensively regulates telephone solicitations and marketing. As interpreted by the FCC, its implementing agency, the TCPA demonstrates Congresses intent to wholly occupy the field of interstate telephonic marketing. The FCC's regulations also allow interstate, business-to-business telephone solicitations. Rinky Dink's attempt to apply the WADAD to interstate business-to-business calls should be dismissed on federal preemption grounds, both field preemption and conflict preemption. As interpreted by Rinky Dink, the WADAD would create a booby-trap for small foreign businesses that operate based upon a good faith understanding of the TCPA and in compliance with the FCC's binding interpretation of the Act. The WADAD would then forbid the very activity that TCPA authorizes. Congress intended to prevent this result through its uniform federal legislation.

Congress has the ability to preempt state law either expressly or implicitly. *Whistler Invs., Inc. v. Depository Trust & Clearing Corp.*, 539 F.3d 1159, 1168 (9th Cir. 2008). Preemption is "compelled whether Congress' command is explicitly stated in the statute's language or implicitly contained in its structure and purpose." *Jones* v. *Rath Packing Co.*, 430 U.S. 519, 525 (1977). When preemption occurs expressly, the inquiry goes to the scope of Congress' displacement of state law. *Altria Group, Inc. v. Good*, 555 U.S. 70, 76 (2008).

Preemption occurs by implication or inference "[where] the scope of the statute indicates that Congress intended federal law to occupy the legislative field, or if there is an actual conflict between state and federal law." *Id.* An actual conflict occurs when "two separate remedies are brought to bear on the same activity." *Crosby v. Nat'l Foreign Trade Council*, 530 U.S. 363, 380

DEFENDANT'S MOTION TO DISMISS THE COMPLAINT- 3
Case No. 2:13-cv-01347-JCC

FOSTER PEPPER PLLC
1111 THIRD AVENUE, SUITE 3400
SEATTLE, WASHINGTON 98101-3299
PHONE (206) 447-4400   FAX (206) 447-9700

1    (2000). The controlling issue when there is a conflict is not the purpose of the state law or the

2    interest of the State, but the language and congressional intent of the federal statute. *Free v.*

3    *Bland*, 369 U.S. 663, 666 (1962) ("The relative importance to the State of its own law is not ma-

4    terial when there is a conflict with a valid federal law, for the Framers of our Constitution pro-

5    vided that the federal law must prevail."); *see also Ridgway v. Ridgway*, 454 U.S. 46, 54-55

6    (1981).

7    Federal regulations have equal pre-emptive effect with federal statutes where Congress

8    has delegated such authority to the federal agency. *Fid. Fed. Sav. & Loan Ass'n v. de la Cuesta*,

9    458 U.S. 141, 153-54 (1982).

10
11   **A.      The TCPA impliedly preempts the application of the WADAD to interstate business-to-business telephone solicitations because the scope of the TCPA indicates Congress's intent to occupy the legislative field.**

12   The TCPA establishes national rules for interstate telemarking. Those rules do not pro-

13   hibit all automatic dialing and announcing device communications to businesses; rather, they

14   provide for the legitimate practice of interstate business-to-business calls. 47 U.S.C. §

15   227(b)(1)(B).

16   The TCPA also includes a savings class that states:

17        [N]othing in this section or in the regulations prescribed under this section
18        shall preempt any State law that imposes more restrictive **intrastate** requirements
          or regulations on, or which prohibits . . .
19           (B) the use of automatic telephone dialing systems.

20   47 U.S.C. § 227(f)(1) (emphasis added).

21   By defining those state laws that are not preempted by the TCPA – those that regulate in-

22   trastate calls – Congress indicated its intent to preempt all other state laws, such as those regulat-

23   ing interstate calls. *Patriotic Veterans, Inc. v. Indiana ex rel. Zoeller*, 821 F. Supp. 2d 1074 (S.D.

24   Ind. 2011) (finding that the TCPA preempted Indiana's Automated Dialing Machine Statute).

25   *Patriotic Veterans* cited the Senate Report discussing the need for the legislation and concluded:

26        the TCPA was enacted with the purpose of establishing **exclusive** regulations re-
          lating to the **interstate** use of automatic telephone dialing systems, as well as es-

DEFENDANT'S MOTION TO DISMISS THE COMPLAINT- 4
Case No. 2:13-cv-01347-JCC

tablishing regulations that would apply to their **intrastate** use unless a particular state chose to enact (or already had enacted) more stringent regulations. To read the TCPA otherwise  would render the word "intrastate" within the savings clause entirely meaningless and thus be inconsistent with the "cardinal principle of statutory construction that we must give effect, if possible, to every clause and word of a statute." *Williams v. Taylor*, 529 U.S. 362, 404, 120 S. Ct. 1495, 146 L. Ed. 2d 389 (2000). If Congress intended for the TCPA to have no preemptive effect, it would not have included the word "intrastate" in the savings clause; the fact that it did indicates that it intended for state laws relating to the interstate use of automatic telephone dialing systems-or at least a portion of those laws, as discussed below-to be preempted, while more restrictive intrastate laws would be enforceable.

*Id.* at 1078 (emphasis added).

The *Patriotic* court went on to analyze the savings clause and found that the interpretation adopted by some courts finding no preemption for interstate prohibitions creates an odd and perplexing result that it did not believe Congress intended:

> If one were to diagram this sentence and read it literally, the savings clause would apply to (1) any state law that imposes more restrictive *intrastate* requirements or regulations on the use of automatic telephone dialing systems; (2) any state law that prohibits the *intrastate* use of automatic telephone dialing systems; and (3) any state law that prohibits the *interstate* use of automatic telephone dialing systems. It would not apply to any state law that imposes more restrictive *interstate* requirements or regulations on the use of automatic telephone dialing systems; in other words, it would protect a state's ability to prohibit conduct altogether but not its ability to place restrictions on it. This result is certainly perplexing, and "[w]here the literal reading of a statutory term would 'compel an odd result,' we must search for other evidence of congressional intent to lend the term its proper scope." *Public Citizen v. U.S. Dept. of Justice*, 491 U.S. 440, 454, 109 S. Ct. 2558, 105 L. Ed. 2d 377 (1989)  (citations and internal quotation marks omitted). "The circumstances of the enactment of particular legislation, for example, may persuade a court that Congress did not intend words of common meaning to have their literal effect." *Id*. (citations and internal quotation marks omitted).

*Id. See also Chamber of Commerce v. Lockyer*, No. 2:05-CV-2257, 2006 U.S. Dist. LEXIS 8324, at *7 (E.D. Cal. Feb. 27, 2006) (finding that the interpretation sought by Plaintiff in this matter "produces an ungainly construction that the Court does not believe Congress intended"); *Williams v. MCIMetro Access Transmission Servs.*, No. C08-82TSZ, Docket Nos. 42, 71, 74 (J. Zilly) (holding that the WADAD is preempted by the TCPA for interstate calls since the purpose of the TCPA is to have uniformity).

DEFENDANT'S MOTION TO DISMISS THE COMPLAINT- 5
Case No. 2:13-cv-01347-JCC

FOSTER PEPPER PLLC
1111 THIRD AVENUE, SUITE 3400
SEATTLE, WASHINGTON 98101-3299
PHONE (206) 447-4400  FAX (206) 447-9700

The TCPA's legislative history indicates Congress did not intend to preclude States from regulating intrastate telecommunications and instead intended to preempt any interstate restrictions, regulations or prohibitions. The Senate Report indicated:

> [O]ver 40 States have enacted legislation limiting the use of ADRMPs [automatic dialer recorded message players] or otherwise restricting unsolicited telemarketing. These measures have had limited effect, however, because States do not have jurisdiction over interstate calls. Many States have expressed a desire for Federal legislation to regulate interstate telemarketing calls to supplement their restrictions on intrastate calls.

S. Rep. No. 102-178 (1991).

Additionally, Senator Hollings, co-sponsor of the TCP stated directly on point that:

> Section 227(e)(1) clarifies that the bill is not intended to preempt State authority regarding intrastate communications except with respect to the technical standards under section 227(d) and subject to section 227(e)(2). Pursuant to the general preemptive effect of the Communications Act of 1934, State regulation of interstate communications, including interstate communications initiated for telemarketing purposes, is preempted.

137 Cong. Rec. S18781-02, S18784.

Such statements by a co-sponsor of the TCPA "carries considerable weight" in determining whether the TCPA was intended to preempt state regulation of interstate telecommunications. *Patriotic Veterans*, 821 F. Supp. 2d at 1077-78 (citing *Corley v. United States*, 556 U.S. 303, 318 (2009)).

### B. The TCPA also impliedly preempts application of the WADAD to interstate business-to-business telephone solicitations because an actual conflict exists.

The WADAD is also conflict-preempted because it prohibits activity specifically authorized by the TCPA: certain interstate business-to-business telephone solicitations. The application of the WADAD advocated by Rinky Dink would therefore frustrate the purpose of the TCPA.

A state law may be preempted because it conflicts with a federal law in four different situations: (1) "where the state law mandates or places irresistible pressure on the subject of the regulation to violate federal law;" (2) "where compliance with both regulations is physically impossible;" (3) "where the state regulation frustrates or hectors the overall purpose of the federal

DEFENDANT'S MOTION TO DISMISS THE COMPLAINT- 6
Case No. 2:13-cv-01347-JCC

1   scheme;" or (4) "where the federal scheme expressly authorizes an activity which the state

2   scheme disallows." *Wells Fargo Bank of Texas NA v. James,* 321 F.3d 488, 491-92 (5th Cir.

3   2003) (citations omitted).

4       One of the purposes of the TCPA was to "promote a uniform regulatory scheme under

5   which telemarketers would not be subject to multiple, conflicting regulations." 18 FCC Rcd

6   14014 (2003). Corporations could then fashion their conduct to conform with the TCPA instead

7   of being subject to multiple different state laws that have stricter or more lenient requirements.

8       The WADAD frustrates this purpose by creating a different set of restrictions for inter-

9   state telecommunications. The TCPA fails to serve this purpose at all if the states can choose to

10  effectively regulate interstate autodialing activity by simply prohibiting it. This creates a trap for

11  the foreign business entity that, in good faith, complies with the TCPA only to find that activity

12  expressly permitted under federal law is outlawed by one of 50 states.

13      The TCPA specifically directed the FCC to issue regulations to implement the restrictions

14  on automated telephone equipment, particularly for businesses, directing that the FCC "shall

15  consider prescribing regulations to allow businesses to avoid receiving" automatic dialing and

16  announcing device calls. 47 U.S.C. § 227 (b)(2)(A). The FCC chose to regulate such calls instead

17  of prohibiting them. *See, e.g.*, 47 C.F.R. § 64.1200(a)(4)-(6), (b)(1)-(2). The FCC also indicated

18  that business-to-business telemarking is a "legitimate method of selling goods and services." *In*

19  *re Rules and Regulations Implementing the Telephone Consumer Protection Act of  1991, Re-*

20  *port and Order,* 18 FCC Rcd. 14014, 14018, 2003 WL 21517853 (F.C.C. July 3, 2003) ("2003

21  Report and Order").

22      By prohibiting interstate business-to-business automatic dialing and announcing device

23  calls that federal law allows, the WADAD is in express conflict with the TCPA.  Because of this

24  conflict, the state law is preempted by the federal statute.

25

26

DEFENDANT'S MOTION TO DISMISS THE COMPLAINT- 7
Case No. 2:13-cv-01347-JCC

1

2

**C.    The FCC, which is entitled to *Chevron* deference, has indicated that the TCPA preempts state regulation of interstate telephone solicitation.**

3        Beyond the specific conflict created with FCC regulations discussed above, the FCC has

4   indicated that state regulation of interstate telephone solicitation is preempted by the TCPA. In

5   the 2003 Report and Order, it explains that inconsistent state rules would frustrate the TCPA's

    purpose:

6
> We recognize that states traditionally have had jurisdiction over only intrastate
7   calls, while the Commission has had jurisdiction over interstate calls. Here, Con-
    gress enacted section 227 and amended section 2(b) **to give the Commission ju-**
8   **risdiction over both interstate and intrastate telemarketing calls**. Congress did
    so based upon the concern that states lack jurisdiction over interstate calls. n267
9   Although section 227(e) gives states authority to impose more restrictive intra-
    state regulations, we believe that it was the clear intent of Congress generally to
10  promote a uniform regulatory scheme under which telemarketers would not be
    subject to multiple, conflicting regulations. **We conclude that inconsistent inter-**
11  **state rules frustrate the federal objective of creating uniform national rules,**
    **to avoid burdensome compliance costs for telemarketers and potential con-**
12  **sumer confusion. The record in this proceeding supports the finding that ap-**
    **plication of inconsistent rules for those that telemarket on a nationwide or**
13  **multi-state basis creates a substantial compliance burden for those entities**.

14  18 FCC Rcd 14014 (FCC 2003) (emphasis added).

15       The Ninth Circuit Court of Appeals held in *Satterfield v. Simon & Schuster, Inc.*, 569

16  F.3d 946 (9th Cir. 2009), that *Chevron* deference should be given to the 2003 Report and Order,

17  which was promulgated by the FCC after Congress delegated it power to make rules and regula-

18  tions to implement the TCPA. *Id.* at 952-54 (citing *Chevron v. Natural Res. Def. Council, Inc.*,

19  467 U.S. 837, 843–44 (1984)). The Ninth Circuit repeated this finding of deference in *Chesbro v.*

20  *Best Buy Stores, L.P.*, 705 F.3d 913, 918 (9th Cir. 2012). The *Chesbro* panel mentioned the less

21  deferential standard set forth by the Supreme Court in *Skidmore v. Swift & Co.*, 323 U.S. 134

22  (1944), and *United States v. Mead Corp.*, 533 U.S. 218 (2001). But its citation indicated that it

23  was following *Satterfield*, which held that *Chevron* deference is due. *Chesbro*, 705 F.3d at 918.

24       Here, the two-step *Chevron* process shows that the Court should follow the FCC's inter-

25  pretation that state law regulation of interstate telephone solicitation is preempted. Congress has

26  not "unambiguously expressed [its] intent." *Satterfield*, 569 F.3d at 952 (quoting *Chevron*,

DEFENDANT'S MOTION TO DISMISS THE COMPLAINT- 8
Case No. 2:13-cv-01347-JCC

**FOSTER PEPPER PLLC**
**1111 THIRD AVENUE, SUITE 3400**
**SEATTLE, WASHINGTON 98101-3299**
**PHONE (206) 447-4400   FAX (206) 447-9700**

467 U.S. at 842-43). The interplay between interstate and intrastate regulation prohibitions in TCPA is "perplexing." *Patriotic*, 821 F. Supp. 2d at 1078.

Given that ambiguity, a court "must defer to the agency so long as 'the agency's answer is based on a permissible construction of the statute.'" *Satterfield*, 569 F.3d at 952 (quoting *Chevron*, 467 U.S. at 843). "An agency's interpretation is permissible, unless it is 'arbitrary, capricious, or manifestly contrary to the statute.'" *Satterfield*, 569 F.3d at 952 (quoting *Chevron*, 467 U.S. at 844).

The FCC permissibly interpreted the "perplexing" saving clause provisions of the TCPA to allow state regulation of intrastate calls but to preempt inconsistent state regulation of interstate calls. As the FCC explained, Congress intended to "promote a uniform regulatory scheme under which telemarketers would not be subject to multiple, conflicting regulations." 2003 Report and Order. The FCC concluded that "inconsistent interstate rules frustrate the federal objective of creating uniform national rules, [and] avoid[ing] burdensome compliance costs for telemarketers and potential consumer confusion." *Id.*

This case is a perfect example of the problem described by the FCC. A call specifically allowed under the TCPA and the FCC's implementing regulations is allegedly a source of liability under Washington law. The rule and rationale that the TCPA preempts such laws is hardly "arbitrary, capricious, or manifestly contrary to the statute." Accordingly, it should be followed. *See Chevron*, 467 U.S. at 844.

### D. Opinions from this district failing to find preemption did not involve business-to-business calling, which is not an area of traditional police power reserved to the states.

This district has addressed the issue of preemption several times. As noted above, at least once it has found preemption. *Williams,* No. C08-82TSZ. Other cases, involving materially different facts, find no preemption, often on the basis of the lack of a direct conflict of the type described above. *E.g., Hovila v. Tween Brands, Inc.*, C09-0491RSL, 2010 WL 1433417, at *9 (W.D. Wash. Apr. 7, 2010) ("Defendant suggests, without actually arguing, that compliance with

DEFENDANT'S MOTION TO DISMISS THE COMPLAINT- 9
Case No. 2:13-cv-01347-JCC

FOSTER PEPPER PLLC
1111 THIRD AVENUE, SUITE 3400
SEATTLE, WASHINGTON 98101-3299
PHONE (206) 447-4400  FAX (206) 447-9700

both the federal and state requirements regarding the use of automated dialing and announcing devices is impossible, thereby triggering conflict preemption."); *Palmer v. Sprint Nextel Corp.*, 674 F. Supp. 2d 1224, 1230 (W.D. Wash. 2009) ("Sprint has not demonstrated that its compliance with the ADAD statute would place it in direct noncompliance with the TCPA on the facts of this case."). Unlike these cases, Rinky Dink's claim presents a direct conflict between state and federal law.

In addition, these cases commonly rely on the presumption against preemption where a state is exercising its police power. That presumption is inapplicable here, since Rinky Dink is a business, not an individual.

While Congress has recognized a presumption against preemption, the presumption does not apply in areas where there is "a history of significant federal presence." *Jones v. Rath Packing Co.,* 430 U.S. 519, 525 (1977); *see also Lockyer*, 2006 U.S. Dist. LEXIS 8324, at *6 ("[W]hen the State regulates in an area where there has been a history of significant federal presence, the presumption usually does not apply."). The federal government has a long history of regulating interstate telecommunications, from which it follows that the presumption against preemption is inapplicable to this matter. *See Ting v. AT & T,* 319 F.3d 1126, 1136 (9th Cir. 2003); *see also Lockyer*, 2006 U.S. Dist. LEXIS 8324, at *6-7 (finding that the presumption against preemption does not apply to interstate telecommunications).

The one exception has been where the area at issue involves the exercise of a state's police powers. The traditional definition of "state police power" is that it concerns the regulation of the health, safety, morals and general welfare of the state's natural citizens. *Medtronic, Inc. v. Lohr,* 518 U.S. 470, 475 (1996); *Metropolitan Life Ins. Co. v. Massachusetts*, 471 U.S. 724, 756 (1985) ("States traditionally have had great latitude under their police powers to legislate as to the protection of the lives, limbs, health, comfort, and quiet of all persons. . . .") (internal quotation marks omitted)); *Paris Adult Theatre I v. Slaton*, 413 U.S. 49, 108-09 (1973) ("The traditional description of state police power does embrace the regulation of morals as well as the

DEFENDANT'S MOTION TO DISMISS THE COMPLAINT- 10
Case No. 2:13-cv-01347-JCC

FOSTER PEPPER PLLC
1111 THIRD AVENUE, SUITE 3400
SEATTLE, WASHINGTON 98101-3299
PHONE (206) 447-4400   FAX (206) 447-9700

1    health, safety, and general welfare of the citizenry."). The Washington Supreme Court has

2    adopted the rule that "to justify any law upon the theory that it constitutes a reasonable and prop-

3    er exercise of police power, it must be reasonably necessary in the interest of the health, safety,

4    morals, or welfare of the people." *County of Spokane v. Valu-Mart, Inc.*, 69 Wn.2d 712, 720, 419

5    P.2d 993 (1966).

6        Prior opinions in this district have all involved the application of the WADAD to auto-

7    matic dialing and announcing device calls received by individual consumers. Therefore, each

8    case started with the premise that there is a presumption against preemption by relying on the

9    "states' traditional police powers" and that the WADAD is an "express consumer protection

10   law." *Hovila*, 2010 U.S. Dist. LEXIS 34861, at *20; *see also Palmer*, 674 F. Supp. 2d 1224,

11   1229 (W.D. Wash. 2009) ("Both Congress and the FCC have recognized that the states have ex-

12   ercised their police powers to regulate or prohibit telecommunications that harm their citizens.");

13   *Hickey v. Voxernet LLC*, 887 F. Supp. 2d 1125, 1130 (W.D. Wash. 2012)  ("Consumer protec-

14   tion is an area of traditional authority creating a presumption against federal preemption.");

15   *Meilleur v. AT&T Inc*., No. C11–1025 MJP, 2011 U.S. Dist. LEXIS 132473, at *3 (W.D. Wash.

16   Nov. 16, 2011) (applying presumption).

17       While the WADAD may be grounded in consumer protection, the particular application

18   sought by Rinky Dink concerns a business-to-business communication. States do not have an

19   inherent interest in protecting businesses' health, safety, welfare or morals.  Businesses also do

20   not have the same privacy concerns that require state policing. *Cf. Minnesota v. Carter*, 525 U.S.

21   83, 90 (1998) ("An expectation of privacy in commercial premises, however, is different from,

22   and indeed less than, a similar expectation in an individual's home." (citations omitted)).  There-

23   fore, there is no presumption against preemption when looking at the WADAD in the context of

24   interstate business-to-business telecommunications such as the communication in this case.

25

26

DEFENDANT'S MOTION TO DISMISS THE COMPLAINT- 11
Case No. 2:13-cv-01347-JCC

1

2

**II.     Rinky Dink's claims under the WADAD fail to meet the Consumer Protection Act's public interest requirement.**

3

4          The WADAD makes a "violation of this section … a violation of chapter 19.86 RCW,"

5    the Washington Consumer Protection Act. Because Rinky Dink's claims do not meet the public

6    interest requirement to bring a Consumer Protection Act claim, both its WADAD and separate

     Consumer Protection Act causes of action should be dismissed.

7          The Washington Supreme Court has set forth five elements a plaintiff must show to re-

8    cover under the Consumer Protection Act: "(1) unfair or deceptive act or practice; (2) occurring

9    in trade or commerce; (3) public interest impact; (4) injury to plaintiff in his or her business or

10   property; (5) causation." *Hangman Ridge Training Stables, Inc. v. Safeco Title Ins. Co.*, 105

11   Wn.2d 778, 780, 719 P.2d 531 (1986).

12         For the public interest element, the court stated:

13         Currently the public interest element may be met in one of two ways: public inter-
           est impact may be established [factually], or the violation may satisfy the public

14         interest element per se.

15         . . .

16         **The per se method requires a showing that a statute has been violated which
           contains a specific legislative declaration of public interest impact.** In *Haer v.*

17         *Quincy Farm Chems., Inc.,* [97 Wn.2d 753, 649 P.2d 828,] 762, [97 Wn.2d 753,
           649 P.2d 828 (1982)], we stated the rule, which has continuing validity: [U]nless

18         there is a 'specific legislative declaration' of a public interest, the public interest
           requirement . . . is not per se satisfied . . .

19   *Hangman Ridge*, 105 Wn.2d at 789-92.

20         Relying on the analysis in *Hangman*, the Washington Court of Appeals dismissed a claim

21   under the Automotive Repair Act (ARA), which indicated that a violation of the ARA is an "un-

22   fair trade practice in violation of the [Consumer Protection Act]," on the basis that the claimant

23   failed to establish the public interest element. *Campbell v. Seattle Engine Rebuilders*, 75 Wn.

24   App. 89, 96-97, 876 P.2d 948 (1994). Between the violation and the ruling, the legislature

25   amended the ARA to indicate that "practices covered by this chapter are matters vitally affecting

26   the public interest for purpose of applying the consumer protection act." RCW 46.71.070. How-

DEFENDANT'S MOTION TO DISMISS THE COMPLAINT- 12
Case No. 2:13-cv-01347-JCC

ever, since that language was missing from the ARA when the violation occurred, the court found that the ARA did not establish a public interest impact and therefore it did not meet the requirements of *Hangman. Campbell,* 75 Wn. App. at 97.

Unlike the amended Automotive Repair Act, there is no "specific legislative declaration" of public interest within the WADAD. While the Legislative Notes to the WADAD reference "public interest," the Legislature choose not to include this within the statutory language as it had in the ARA.

Also in sharp contrast to the WADAD, the Legislature included the public interest declaration as to other provisions of the same statute.  In RCW 80.36.530, the Legislature called out other sections of Chapter 80.36 that it deemed to meet be in the public interest, but did not include the WADAD (RCW 80.36.400):

> In addition to the penalties provided in this title, a violation of RCW 80.36.510, 80.36.520, or 80.36.524 constitutes an unfair or deceptive act in trade or commerce in violation of chapter 19.86 RCW, the consumer protection act. Acts in violation of RCW 80.36.510, 80.36.520, or 80.36.524 are not reasonable in relation to the development and preservation of business, and constitute matters vitally affecting the public interest for the purpose of applying the consumer protection act, chapter 19.86 RCW.

The omission of the WADAD among the violations that meet the public interest test shows the Legislature did not intend that any violation of the WADAD automatically meet the requirements for showing public interest. In this case, Rinky Dink must allege and show the acts affect the public interest, which it has not done and will not be able to do.

The application Rinky Dink seeks of the WADAD does not meet the public interest requirement as the public is not affected by the acts Rinky Dink alleges. Relevant factors for looking at the public interest element include:

> whether the acts were committed in the course of the defendant's business; whether the defendant advertised to the public; whether the defendant actively solicited the plaintiff, thereby indicating other similar solicitations took place; and whether the parties occupied unequal bargaining positions.

*Goodyear Tire & Rubber Co. v. Whiteman Tire*, 86 Wn. App. 732, 745, 935 P.2d 628 (1997).

DEFENDANT'S MOTION TO DISMISS THE COMPLAINT- 13
Case No. 2:13-cv-01347-JCC

FOSTER PEPPER PLLC
1111 THIRD AVENUE, SUITE 3400
SEATTLE, WASHINGTON 98101-3299
PHONE (206) 447-4400  FAX (206) 447-9700

In *Goodyear*, the court found that solicitation by a tire company to a car dealership was not "typical of those present in cases giving rise to cognizable consumer protection complaints," and therefore, since a car dealership had business experience to judge risks associated with a solicitation and was not vulnerable to exploitation, the alleged act failed as a "matter of law" to "affect the public interest." *Id.*

Similarly, the violation Rinky Dink alleges in this matter does not affect the public interest. The Consumer Protection Act does not provide protection for entities like Rinky Dink that have "sufficient sophistication to remove them from the class of bargainers subject to exploitation." *Pac. Northwest Life Ins. Co. v. Turnbull,* 51 Wn. App. 692, 703, 754 P.2d 1262 (1988); *see also Segal Co. v. Amazon*, 280 F. Supp. 2d 1229 (W.D. Wash. 2003) (citing with approval *Pac. Northwest Life Ins Co.* and granting a motion to dismiss on the basis that the plaintiff was an "experienced business person" not within the scope of the Consumer Protection Act). The Complaint in this matter does not allege facts to indicate the claimed violation would have any relation to the public interest.

The Consumer Protection Act was designed to protect consumers and therefore, for conduct to be actionable it must "affect consumer interests." *Segal*, 280 F. Supp. at 1233. The alleged call by EMS to Rinky Dink does not affect public interest as Rinky Dink is an experienced business entity (indeed, it has experience in particular with this statute, as evidenced by the three suits it has previously filed). It is not in an unequal bargaining position; and therefore, its complaint, based on the Consumer Protection Act, should be dismissed. *See Abbouds' McDonald's LLC v. McDonald's Corp.*, No. 05-36032, 2006 U.S. App. LEXIS 17187, at *5 (9th Cir. July 7, 2006) (affirming dismissal of a Consumer Protection Act claim regarding a trademark dispute between two companies because "it did not affect the public interest").

DEFENDANT'S MOTION TO DISMISS THE COMPLAINT- 14
Case No. 2:13-cv-01347-JCC

FOSTER PEPPER PLLC
1111 THIRD AVENUE, SUITE 3400
SEATTLE, WASHINGTON 98101-3299
PHONE (206) 447-4400   FAX (206) 447-9700

1

2

**III.    Rinky Dink's request for treble damages under the Consumer Protection Act should be dismissed because it does not have actual damages.**

3

4

Assuming for argument's sake this Court finds that Plaintiff has alleged the elements for a Consumer Protection Act claim, it should dismiss the request for treble damages. Under the Consumer Protection Act,

5

6

> Any person . . . may bring a civil action in the superior court to enjoin further violations, to recover the actual damages sustained by him, or both, together with the costs of the suit, including a reasonable attorney's fee, and the court may in its discretion, *increase the award of damages to an amount not to exceed three times the actual damages sustained*.

7

8

9

RCW 19.86.090. In order to recover treble damages, a party must suffer "actual damages." *St. Paul Fire & Marine Ins. Co. v. Updegrave*, 33 Wn. App. 653, 660, 656 P.2d 1130 (1983) (holding that a party is precluded from recovering treble damages where it fails to "show actual monetary damages"); *see also Mason v. Mortgage Am.*, 114 Wn.2d 842, 855, 792 P.2d 142 (1990) ("[T]reble damages are based upon 'actual' damages awarded. . . ."); *Sign-O-Lite Signs v. Delaurenti Florists*, 64 Wn. App. 553, 565, 825 P.2d 714 (1992) ("The case law is clear that treble damages may only be based upon actual damages.").

10

11

12

13

14

15

Rinky Dink has not alleged it suffered any actual damages and instead seeks statutory damages of $500 per violation. As a matter of law, since the Complaint is void of any allegation as to actual damages, the claim for treble damages under the Consumer Protection Act should be dismissed.

16

17

18

19

20

21

22

23

24

25

26

DEFENDANT'S MOTION TO DISMISS THE COMPLAINT- 15
Case No. 2:13-cv-01347-JCC

**FOSTER PEPPER PLLC**
**1111 THIRD AVENUE, SUITE 3400**
**SEATTLE, WASHINGTON 98101-3299**
**PHONE (206) 447-4400   FAX (206) 447-9700**

**CONCLUSION**

Defendant Electronic Merchant Systems, Inc. respectfully asks this Court to dismiss the Complaint, with prejudice, pursuant to Rule 12(b)(6). Rinky Dink's state WADAD claim is preempted by the federal TCPA. It also fails to allege public interest needed to maintain either of its causes of action based on the Consumer Protection Act. This defect is irreparable since the alleged violation against Rinky Dink, a corporation and experienced business entity, does not justify the invocation of the State's police power. Finally, in the event this Court denies the Motion to Dismiss the Consumer Protection Act claims, it should dismiss the request for treble damages since Rinky Dink has not alleged actual damages.

DATED this 27th of September, 2013.

Respectfully submitted,

**FOSTER PEPPER PLLC**

/s/ Michael K. Vaska
Michael K. Vaska, WSBA #15438
Email: vaskm@foster.com
1111 Third Avenue, Suite 3400
Seattle, Washington 98101-3299
Telephone: (206) 447-8895
Facsimile: (206) 749-2024

**BEAN KINNEY & KORMAN, P.C.**

/s/ William F. Krebs,
William F. Krebs, VSB 17347 (*pro hac vice*)
Email: wkrebs@beankinney.com
2300 Wilson Boulevard, Seventh Floor
Arlington, VA 22201
Telephone: (703) 525-4000
Facsimile: (703) 525-2207 (fax)

DEFENDANT'S MOTION TO DISMISS THE COMPLAINT- 16
Case No. 2:13-cv-01347-JCC

FOSTER PEPPER PLLC
1111 THIRD AVENUE, SUITE 3400
SEATTLE, WASHINGTON 98101-3299
PHONE (206) 447-4400  FAX (206) 447-9700

1

/s/ Rachelle E. Hill
Rachelle E. Hill VSB 74996 (*pro hac vice*)
Email: rhill@beankinney.com
2300 Wilson Boulevard, Seventh Floor
Arlington, VA 22201
Telephone: (703) 525-4000
Facsimile: (703) 525-2207 (fax)

*Attorneys for Defendant*
*Electronic Merchants Systems, Inc.*

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

DEFENDANT'S MOTION TO DISMISS THE COMPLAINT- 17
Case No. 2:13-cv-01347-JCC

FOSTER PEPPER PLLC
1111 THIRD AVENUE, SUITE 3400
SEATTLE, WASHINGTON 98101-3299
PHONE (206) 447-4400  FAX (206) 447-9700

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

### CERTIFICATE OF FILING AND SERVICE

I hereby certify that on this 27th day of September, 2013, I electronically filed the forego-ing with the Clerk of the Court using the CM/ECF system, which will send a notification of such filing to the following:

Beth E. Terrell, WSBA #26759
bterrell@tmdwlaw.com
Kimberlee L. Gunning, WSBA #35366
kgunning@tmdwlaw.com
936 North 34th Street, Suite 400
Seattle, Washington 98103-8869
Telephone: (206) 816-6603
Facsimile: (206) 350-3528

Rob Williamson, WSBA #11387
roblin@williamslaw.com
Kim Williams, WSBA #9077
kim@williamslaw.com
WILLIAMSON & WILLIAMS
2339 West Viewmont Way West
Seattle, Washington 98199
Telephone: (206) 466-6230
Facsimile: (206) 535-7899

/s/ Michael K. Vaska
Michael K. Vaska, WSBA #15438

DEFENDANT'S MOTION TO DISMISS THE COMPLAINT- 18
Case No. 2:13-cv-01347-JCC

FOSTER PEPPER PLLC
1111 THIRD AVENUE, SUITE 3400
SEATTLE, WASHINGTON 98101-3299
PHONE (206) 447-4400 FAX (206) 447-9700