1

2

3

4

5

6

7

8

THE HONORABLE JOHN C. COUGHENOUR

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

9

10

11

12

13

14

RINKY DINK, INC., et al.,

Plaintiffs,

v.

ELECTRONIC MERCHANT SYSTEMS, et al.

Defendants.

CASE NO. C13-1347-JCC

ORDER SEALING DOCUMENTS AND GRANTING DEFENDANT CALLFIRE'S MOTION FOR SUMMARY JUDGMENT

15

16

17

18

19

20

This matter comes before the Court on Defendant CallFire's motion for summary judgment and supporting exhibits (Dkt. Nos. 84, 85), Plaintiffs' response and supporting exhibits (Dkt. Nos. 93, 94), Plaintiffs' motion to seal documents attached to their response (Dkt. No. 89), and Defendant's reply and supporting exhibits (Dkt. Nos. 95, 96). On January 28, 2015, this Court ordered additional briefing on the motion to seal (Dkt. No. 102), which the parties provided (Dkt. Nos. 104 & 108).

21

22

23

As discussed, *infra*, the Court finds compelling reasons to keep some of the disputed documents filed under seal and **GRANTS** the motion to seal (Dkt. No. 89) in part.

24

25

26

Defendant CallFire is a common carrier, and therefore not subject to liability for alleged violations of the Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. § 227(b)(1)(A). Furthermore, CallFire did not "initiate" any of the pre-recorded phone calls received by Plaintiffs

ORDER SEALING DOCUMENTS AND
GRANTING DEFENDANT CALLFIRE'S
MOTION FOR SUMMARY JUDGMENT
PAGE - 1

and therefore cannot be found, as a matter of law, to have violated the Washington Automatic

Dialing and Announcing Device ("WADAD") statute, RCW 80.36.400. Having thoroughly

considered the parties' briefing and the relevant record, the Court finds oral argument

unnecessary and hereby **GRANTS** the motion for summary judgment (Dkt. No. 84) for the

reasons explained herein.

## I.   BACKGROUND

Plaintiffs Rinky Dink, Inc. ("Rinky Dink") and Frank Knott ("Knott") bring this proposed

class action suit against Defendants Electronic Merchant Systems ("EMS"), CallFire, Inc.

("CallFire"), and Jeffrey Gehrs ("Gehrs") for alleged telemarketing. Dkt. No. 51, p. 1. Plaintiffs

sue on their own behalf and as class representatives for others similarly situated. *Id.* Rinky Dink,

a pet supply store, states that on May, 22 2012, it received a pre-recorded telemarketing call

made by or on behalf of Defendants. *Id.* at 8. Knott states that on an unspecified date in 2012, he

received a similar pre-recorded telemarketing call made by or on behalf of Defendants on his cell

phone. *Id.* at 10.

Both Plaintiffs allege that, by using an Automatic Dialing and Announcing Device

("ADAD"), Defendants violated the WADAD statute, RCW 80.36.400, and—by extension—the

Washington Consumer Protection Act ("WCPA"), RCW 19.86 *et seq*. Plaintiff Knott alleges that

Defendants violated the Telephone Consumer Protection Act ("TCPA"), 47 U.S.C.

§ 227(b)(1)(A), by calling his cell phone. *Id.* at 12.

Defendant Gehrs and his company, Defendant EMS, contracted with Defendant CallFire

to transmit telephone calls that EMS designed and recorded. Dkt. No. 85, Ex. 3 (Gehrs

Deposition 1). Gehrs is the president, founder, and owner of EMS, a company that identifies

merchants who want to enter into agreements with banks to handle the processing and managing

of the merchant's retail credit card transactions. Dkt. No. 1 at 3. CallFire is a company that provides an online platform for "voice and text connectivity" to thousands of customers who design calling or texting campaigns through its website. *See* Dkt. No. 51, p. 5. EMS chose to use CallFire's services to promote its business. Gehrs Deposition 1. EMS representatives did not have an in-person meeting with CallFire prior to its beginning to use CallFire's services, but described CallFire as "an online provider" whose website contained the information EMS relied upon. *Id.* at pp. 35–36. EMS created "campaigns" with CallFire by selecting a group of phone numbers to be called, scheduled call times, as well as beginning and ending dates for the campaign. Dkt. No. 94, Ex. 24 (Gehrs Deposition 2), p. 129–130. EMS had the power to stop and delete campaigns, although Gehrs—somewhat weakly—suggested that CallFire at one time reinstated a deleted campaign. Gehrs Deposition 2, p. 129.[1] EMS drafted a scripted message, hired an actor to record the message, provided the phone numbers, and chose the locations and timing of the calls. Gehrs Deposition 1, pp. 130–132. CallFire was not involved in the creation, or the content, of EMS's messages. *Id.*

CallFire moves the Court for summary judgment on two grounds: (1) first, that as a common carrier, it is exempt from liability under the TCPA, and (2) second, that it did not "initiate" the calls to Plaintiffs and therefore cannot be liable under either the TCPA or the

---

[1] Gehrs: CallFire restarted campaigns that were stopped on their own. . . After they were stopped and deleted, they started again.
Q: Do you have any correspondence with CallFire about campaigns going out after they were deleted?
Gehrs: No.
Q: So what is your basis for then saying that campaigns went out after they were deleted from your CallFire account?
Gehrs: It happened.
Q: Do you have any record evidence supporting that?
Gehrs: Your bill to me.
The Court is not aware of any other evidence of a reinstated campaign, or of any additional details about the campaign to which Gehrs refers.

1  WADAD as a matter of law.

2      The parties also dispute whether or not certain exhibits presented by Plaintiffs are to

3  remain filed under seal. The Court turns first to this inquiry.

4  **II.   DISCUSSION**

5      **A.     Motion to Seal**

6      As part of their response to CallFire's motion for summary judgment, Plaintiffs filed

7  twenty-five (25) exhibits with the declaration of Beth Terrell. Dkt. No. 94. Six (6) of those

8  exhibits contain material that Plaintiffs indicated had been previously designated as

9  "Confidential." *Id.* pp. 2–4. Pursuant to Local Civil Rule 5(g), Plaintiffs filed redacted versions

10  of these exhibits in their response, *see* Dkt No. 94, and filed the materials under seal along with

11  the motion to seal, *see* Dkt. Nos. 89 & 91.

12      There is a presumption of public access to judicial records and documents. *Nixon v.*

13  *Warner Commc'ns, Inc.*, 435 U.S. 589, 597(1978). A party, therefore, must demonstrate

14  "compelling reasons" to seal judicial records attached to a dispositive motion. *Kamakana v. City*

15  *& Cnty. of Honolulu*, 447 F.3d 1172, 1179 (9th Cir.2006). Despite CallFire's argument to the

16  contrary, it was obligated to articulate a "compelling reason" to keep the materials under seal as

17  the materials were filed in connection with a dispositive motion. *See Kamakana*, 447 F.3d at

18  1178–1180; *M.P. ex rel. Provins v. Lowe's Companies, Inc.*, 2012 WL 1574801, at *1 (E.D. Cal.

19  May 3, 2012) (applying "compelling reasons" standard related to a minor's settlement because

20  an order approving settlement is dispositive). CallFire has set forth compelling reasons to seal

21  some of the disputed materials. Dkt. No. 104. Furthermore, as some of the sealed materials relate

22  to whether or not CallFire had a "high degree of involvement" in the alleged unlawful activities

23  of its customers such that liability would be triggered, they are relevant to the Court's analysis of

its motion for summary judgment. *See* Part II(C)(3)(A), *infra*.

The Court finds compelling reason to keep the following documents filed under seal: (1) the Expert Disclosure and Written Report of Plaintiff's Expert Jeffrey Hansen (Dkt. No. 94, Ex. 6; Dkt. No. 91, Ex. 4 *SEALED), (2) CallFire's Response to the FCC's letter of inquiry (Dkt. No. 94, Ex. 13; Dkt. No. 91, Ex. 13 *SEALED), (3) CallFire's Response to the FTC's Civil Investigation Demand (Dkt. No. 94, Ex. 23; Dkt. No. 91, Ex. 23 *SEALED), and (4) the redacted portions of the deposition transcript of CallFire COO Jaggannathan Thinakaran (*compare* Dkt. No. 94, Ex. 3 *and* Dkt. No. 91, Ex. 3).

The transcript of a service call with a potential CallFire customer (Dkt. No. 94, Ex. 22; Dkt. No. 91, Ex. 22) and CallFire's Annual Form 499A Telecommunications Reporting Worksheet (Dkt. No. 94, Ex. 25; Dkt. No. 91, Ex. 25) are irrelevant, lack a compelling reason to remain under seal, and are hereby **ORDERED** unsealed.

1. Report of Jeffrey Hansen

The report of Plaintiffs' expert, Jeffrey Hansen, contains aggregate customer information as well as detailed information regarding CallFire's technical processes, and is appropriately kept under seal. The fact that CallFire was *allowed* to disclose its customers' information and remain in compliance with the Communications Act does not negate the validity of sealing such information after disclosure. *See* 47 U.S.C. § 222(c)(3); *see also* Dkt. No. 81, p. 3 (designating proprietary customer information as "Confidential"). The balance between the public interest in access to judicial records and protecting CallFire's sensitive business information falls in favor of sealing this report.

2. Response to FCC Letter

CallFire's response to the FCC contains information about internal, confidential

processes to detect fraud and abuse. Public disclosure of this process would not only affect CallFire's business, but may seriously undermine the efficacy of the process. The balance of interests tips in CallFire's favor and the Court finds compelling reason to keep CallFire's response to the FCC letter (Dkt. No. 94, Ex. 13; Dkt. No. 91, Ex. 13 *SEALED) filed under seal. For the same reason, the Court also orders CallFire's response to an FTC Civil Investigation (Dkt. No. 94, Ex. 23; Dkt. No. 91, Ex. 23 *SEALED) remain under seal.

      3.  <u>Transcript of Thinakaran Deposition</u>

      The transcript of CallFire COO Jagannathan Thinakaran's deposition contains testimony about CallFire's practices to detect fraud and abuse. The Court does not understand CallFire's decision to argue that it did not, and need not, designate any portion of the deposition as "Confidential." The redacted portions of the Thinakaran deposition have the same compelling reason to be sealed as the aforementioned documents—namely, to protect CallFire's practices and sensitive business information. The Court *sua sponte* orders the deposition remain under seal pursuant to its power under Fed. R. Civ. P. 5.2(d)-(e). The unredacted version of the deposition transcript (Dkt. No. 91, Ex. 3 *SEALED) will remain sealed.

      4.  <u>Transcript of Potential Customer Call</u>

      The Court agrees that the transcript of a potential customer call, identified as CallFire_001784, is irrelevant to its review of the summary judgment motion. The Court does not rely upon this document in addressing CallFire's summary judgment motion. Nor has a compelling reason been articulated to seal it—as Plaintiffs point out, to consider the inquiry of a potential customer to fall under the purview of the Communications Act, 47 U.S.C. § 222, is illogical. The transcript of the service call between a CallFire representative and a potential customer (Dkt. No. 94, Ex. 22; Dkt. No. 91, Ex. 22) is hereby **ORDERED** unsealed.

5.   <u>Annual 499A Worksheet</u>

CallFire's 499A Worksheet is irrelevant to the issues raised in this summary judgment motion, and the Court does not rely on evidence contained in the worksheet in addressing the motion. Moreover, the Court does not find a compelling reason to keep the 499A Worksheet under seal; as Plaintiffs point out, the limited financial information contained in the worksheet does not constitute highly sensitive business information to warrant remaining sealed. CallFire's 499A Worksheet (Dkt. No. 94, Ex. 25; Dkt. No. 91, Ex. 25) is hereby **ORDERED** unsealed.

**B.    Standard on Summary Judgment**

Summary judgment is proper where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986). The Court must draw all reasonable inferences in favor of the non-moving party. *F.D.I.C. v. O'Melveny & Meyers*, 969 F.2d 744, 747 (9th Cir. 1991). The moving party bears the burden of demonstrating the absence of a genuine issue of material fact for trial. *Anderson*, 477 U.S. at 257. Mere disagreement, or a bald assertion that a genuine issue of material fact exists, does not preclude summary judgment. *California Architectural Bldg. Prods., Inc. v. Franciscan Ceramics, Inc.*, 818 F.2d 1466, 1468 (9th Cir. 1987).

Genuine factual issues are those for which the evidence is such that "a reasonable jury could return a verdict for the non-moving party." *Anderson*, 477 U.S. at 248. Material facts are those which might affect the outcome of the suit under governing law. In ruling on summary judgment, a court does not weigh evidence to determine the truth of the matter, but "only determine[s] whether there is a genuine issue for trial." *Crane v. Conoco, Inc.*, 41 F.3d 547, 549

1   (9th Cir. 1994) (internal citation omitted). Furthermore, conclusory or speculative testimony is

2   insufficient to raise a genuine issue of fact to defeat summary judgment. *Anheuser-Busch, Inc. v.*

3   *Natural Beverage Distributors*, 69 F.3d 337, 345 (9th Cir. 1995).

4         **C.**     **Whether CallFire is a Common Carrier Exempt from TCPA Liability**

5         1.  <u>Common Carriers do not Fall Within the TCPA's Scope</u>

6         It is unlawful, under the TCPA, "to make any call (other than a call made for emergency

7   purposes or made with the prior express consent of the called party) using an automatic

8   telephone dialing system or an artificial or prerecorded voice. . . to any telephone number

9   assigned to a. . . cellular telephone service." 47 U.S.C. § 227(b)(1)(A)(iii). Plaintiff Knott sues

10  Defendants under the TCPA for a pre-recorded call he allegedly received on his cell phone. Dkt.

11  No. 51, p. 12.

12        The TCPA does not apply to common carriers. The TCPA was intended to "apply to the

13  persons *initiating* the telephone call or sending the message and. . . not to the common

14  carrier. . . that transmits the call or messages and that is not the originator or controller of the

15  content of the call or message." *Couser v. Pre-paid Legal Services, Inc.*, 994 F.Supp.2d 1100,

16  1104 (S.D. Cal. 2014) (emphasis in the original) (citing S.Rep. No. 102–178 (1991), 1991 WL

17  211220 at *9). Common carriers are not liable under the TCPA absent a "high degree of

18  involvement or actual notice of an illegal use and failure to take steps to prevent such

19  transmissions." *In the Matter of Rules and Regulations Implementing the TCPA of 1991*, 7 FCC

20  Rcd. 8752, 8779–80 (1992); [2] *see also In the Matter of Enforcement of Prohibitions Against the*

---

[2] The Court's reliance on final FCC orders is justified. The FCC's interpretations of TCPA are controlling unless invalidated by a court of appeals. *See* 28 U.S.C. 2342 *et seq.* (the "Hobbs Act"); *Pacific Bell v. Pac West Telecomm*, 325 F.3d 1114, 1125 (9th Cir.2003). *Olney v. Job.com, Inc*., No. 1:12-CV-01724-LJO, 2014 WL 1747674, at *4 (E.D. Cal. May 1, 2014). Furthermore, while Plaintiffs argue that FCC orders pertaining to different portions of the

*Use of Common Carriers for the Transmission of Obscene Materials*, 2 FCC Rcd. 2819, 2820 (1987) (relating to a different provision of the TCPA) ("[C]ommon carriers will not generally be liable for illegal transmissions unless it can be shown that they knowingly were involved in transmitting the unlawful material."); *Clark v. Avatar Technologies PHL, Inc.*, 2014 WL 309079 at *3 (S.D. Tex. Jan. 28, 2014) (granting motion to dismiss on the grounds that the TCPA does not impose liability on telecommunications carrier for calls made by another).

2.   CallFire is a Common Carrier

Whether or not a party is a "common carrier" is a relatively simple, two-part inquiry:

(1)    Does the entity hold itself out indifferently to all potential users or, if serving a legally-defined class, hold itself out indiscriminately to serve all within that class; and
(2)    Does the entity allow customers to transmit messages of their own design and choosing?

*U.S. Telecom Ass'n v. F.C.C.*, 295 F.3d 1326, 1329–1330 (D.C. Cir. 2002); *see also Nat'l Ass'n of Regulatory Util. Comm'rs v. F.C.C.*, 533 F.2d 601, 608–609 (D.C. Cir. 1976). Common carriers need not be officially recognized by the FCC.

A.   *Indifference/Indiscriminate Nature of Services*

In assessing whether an entity possesses the first trait of a common carrier, "[t]he key factor is that the operator offer indiscriminate service to whatever public its service may legally and practically be of use." *In Re Fed.-State Joint Bd. on Universal Serv.*, 16 F.C.C. Rcd. 571, 573 (2000) (citing *Iowa v. F.C.C.*, 218 F.3d 756, 759 (D.C. Cir. 2000)).

---

TCPA are inapplicable to the facts of this case, both the legislative history of the TCPA and the pattern of FCC decisions support the concept of common carrier exemption. *See* S.Rep. No. 102–178 (1991), 1991 WL 211220 at *9; 129 Cong. Rec. H 10559 (Nov. 18, 1983) (statement of Rep. Bliley); 129 Cong. Rec. S 16866, 16867 (Nov. 18, 1983) (statement of Senator Trible); Letter from Congressman Bliley dated June 29, 1983. Since issuing the FCC Order referred to in the parties' briefing as the *Common Carrier Immunity Order*, the FCC has expanded this immunity to fax broadcasters – representing a desired expansion, not limitation, of common carrier exemption from legal liability. 2 FCC Rcd. 2819 (1987); 7 FCC Rcd. 8752 (1992).

CallFire markets itself online primarily through its website. Dkt. No. 94, Ex. 1, p. 2. In fact, EMS identified and utilized CallFire's services solely through its online presence. Gehrs Deposition 1, pp. 35–36. There is no indication that CallFire's terms of service apply differently to any of its customers. Dkt. No. 94, Exs. 5–6. Even with regard to fraud detection, the facts before the Court indicate that these processes apply universally to all customers. Dkt. No. 94, Ex. 3, pp. 81–82 (redacted). There is no genuine issue of material fact as to the uniform and indiscriminate nature of CallFire's service to its customers.

B.  *Messages of the User's "Own Design and Choosing"*

If engaging with a true common carrier, "[m]embers of the public must communicate or transmit intelligence of their own design and choosing." *F.C.C. v. Midwest Video Corp.*, 440 U.S. 689, 702 (1979). Specific content is "the sole responsibility or prerogative of the subscriber and not the carrier." *Frontier Broad. Co., et al., Complainants*, 24 F.C.C. 251, 254 (1958).

Plaintiffs' argument that, because CallFire transmits calls "depending on network availability, " therefore "control over whether messages are actually delivered lies with CallFire alone," is not well taken. Dkt. No. 93, p. 17. In support for its argument that CallFire directs and controls the timing of calls, Plaintiffs cite a portion of the deposition of CallFire COO Thinakaran. Dkt. No. 94, Ex. 3, pp. 71–73. In his deposition, Thinakaran indicates that the actual transmission of calls is "subject to network issues," as illustrated by the lack of network availability during Hurricane Sandy when a network switch was physically underwater. *Id.* Plaintiffs appear to illogically suggest that, because forces *outside of CallFire's control* may limit the transmission of phone calls at its customer's specified time, CallFire is therefore *in direct control* of the calls made. Plaintiffs' assertion does not present a genuine issue of material fact as to CallFire's status as a common carrier.

PAGE - 10

Furthermore, Gehrs' testimony regarding the reinstatement of a deleted campaign—even if it were supported by additional evidence—does not establish that CallFire exercised any control over message content. EMS drafted the message, hired an actor to record the message, selected the phone numbers to be called, and chose the locations and timing of the calls. Gehrs Deposition 1, pp. 130–132. There is no genuine dispute; EMS was the sole architect of the calls placed to Plaintiffs.

### C.  Fraud Detection Does Not Undermine Common Carrier Status

Common carriers may prohibit the illegal use of their services. *In the Matter of Enforcement of Prohibitions Against the Use of Common Carriers for the Transmission of Obscene Materials*, 2 FCC Rcd. 2819, 2819 (1987). Such practices do not negate common carrier status. *Id.*

CallFire's terms of use require that its customers check their own activities for legal compliance. Dkt. No. 85, pp. 43–44; Dkt. No. 94, Ex. 5, p. 3; Ex. 6 p. 3.  EMS indicates that it sought legal counsel of its own for this very purpose. Gehrs Deposition 1, pp. 108–109.

Plaintiffs argue that CallFire's fraud detection practices render CallFire too "highly involved" to be a common carrier exempt from TCPA liability. Dkt. No. 93, pp. 12–13 (relying on sealed materials). As CallFire points out, however, telephone companies generally considered to be common carriers adopt similar practices. Dkt. No. 95, p. 6, n. 20–22. The facts before the Court do not suggest that CallFire in any way edits or modifies the content of customer messages. Dkt. No. 91, Ex. 3, pp. 81–83 (SEALED).

### D.  Other Opinions Relied on by Plaintiffs are Misguided

In an effort to establish that CallFire is not, in fact, a common carrier, Plaintiffs rely on several opinions where a court was ruling on a motion to dismiss rather than summary judgment.

*See, e.g. Luna v. Shac, LLC*, 2014 WL 5324291, at \*2 (N.D. Cal. Oct. 17, 2014); *Kauffman v. Callfire*, No. 14cv1333-H-DHB (Dkt. 5-1 at p. 1, Dkt. 13-1 at p.1); *Couser v. Prepaid Legal Servs., Inc.*, 994 F.Supp.2d 1100 (S.D. Cal. 2014); Dkt. No. 78 (this Court's order denying motion to dismiss).

The analysis each court underwent in reaching a decision on a motion to dismiss, however, is completely different than the summary judgment inquiry presently before the Court. In fact, most of those opinions indicated that, given more information, it appeared likely that CallFire was sufficiently "passive" or a "middleman" that subsequent dismissal on summary judgment would be warranted. Dkt. No. 78 at 7; *Couser* 994 F.Supp.2d at 1105 ("The Court is generally receptive to CallFire's arguments; it does seem that Congress and the FCC, if pressed, would absolve an entity like CallFire from liability under the TCPA for [its customers'] promotional calls.").

Even drawing all reasonable inferences in Plaintiffs' favor, the Court finds that CallFire is a common carrier for the purposes of assessing liability under the TCPA. The sole remaining question is whether CallFire had sufficient knowledge or involvement to overcome its presumed exemption from TCPA liability.

     3.  <u>CallFire was Not "Highly Involved" or Aware of Unlawful Activity Such that Liability is Justified</u>

A common carrier may be held liable for the unlawful activities of its users if it is found that the carrier: (1) exercised a high degree of involvement with the unlawful activity, or (2) had actual notice of an illegal use of its services. *In the Matter of Rules and Regulations Implementing the TCPA of 1991*, 7 FCC Rcd. 8752, 8779–80 (1992).

     A.  *"High Degree of Involvement"*

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26

A "high degree of involvement" exists where the broadcaster (1) controls the recipient lists; and/or (2) controls the content of the transmissions." *Rules and Regulations Implementing the TCPA of 1991*, 68 F.R. 44144-01, 44169 (2003).

Plaintiffs' sole argument that CallFire was highly involved in the calls to Plaintiffs stems from CallFire's practice of fraud detection. Dkt. No. 93, pp. 12–13 (relying on sealed materials). As discussed, *supra* Part II(B)(2)(c), these practices do not involve editing of any recipient lists or content, and do not rise to the level of a "high degree" of involvement such that TCPA liability is appropriate as to CallFire. Nor is there indication, based on Gehrs' testimony about reinstated campaigns, that CallFire exercised control over the recipient lists or the content of the messages.

### B.  Actual Knowledge of Unlawful Activity

Neither party alleges that CallFire had actual knowledge of unlawful activity by EMS. EMS is one of many CallFire customers. *See* Dkt. No. 91, Ex. B, 3, p. 83 (SEALED). No indication is made that CallFire had actual knowledge of EMS's activities, nor would it be logical to assume so given its sheer number of customers.

Plaintiffs suggest, however, that CallFire should have known that the use of its system to engage in automatic dialing—what is even referred to in CallFire's promotional materials as "robo-dialing"—was illegal. Dkt. No. 94, Ex. 2. In so suggesting, Plaintiffs direct the Court's attention to a suit filed against CallFire by the FTC in 2013. Dkt. No. 93, pp. 1, 5–6. Significantly, none of the allegations in that lawsuit fell under the TCPA. *See* Dkt. No. 94, Ex. 8 (FTC Complaint). Nor is the above-captioned matter in any way related to the enforcement of the injunction agreed to in the Northern District of California. The FTC lawsuit has nothing to do with the calls placed by EMS. The Court does not consider Plaintiffs' citations to other,

independent lawsuits relevant evidence in reviewing this summary judgment motion.

Drawing all reasonable inferences in Plaintiffs' favor, there remains no genuine issue of material fact as to whether CallFire had a high degree of involvement or actual knowledge of the illegality of EMS's calls to phone numbers in Washington such that TCPA liability is appropriate.

With regard to CallFire's liability under the TCPA, there remains no genuine issue of material fact: CallFire is a common carrier, was not involved in EMS's message transmission to a "high degree," and did not have actual knowledge of the EMS calls. As such, CallFire does not fall within the scope of the TCPA and its motion for summary judgment with regard to Plaintiffs' TCPA claims against it is hereby **GRANTED**.

**D.      No Common Carrier Immunity Under the WADAD**

The WADAD statute does not contain an immunity provision for common carriers. *See* RCW 80.36.400 *et seq.* Nor does CallFire assert that it is immune as a common carrier under Washington law. *See* Dkt. Nos. 84, 95.

**E.      Whether CallFire "Initiates" Messages under the WADAD**

The remaining issue on summary judgment is whether CallFire may be held liable for violating the WADAD statute, RCW 80.36.400. The WADAD statute provides that "[n]o person may use an automatic dialing and announcing device for the purposes of commercial solicitation." RCW 80.36.400(2). An automatic dialing and announcing device ("ADAD") is considered one that "automatically dials telephone numbers and plays a recorded message once a connection is made." RCW 80.36.400(1)(a). Commercial solicitation is defined as "the unsolicited *initiation* of a telephone conversation for the purpose of encouraging a person to purchase property, goods, or services." RCW 80.36.400(1)(b) (emphasis added). CallFire may

1   only be held liable under the WADAD statute if it is found to have "initiated" the telephone calls

2   at issue. "Initiates" is not defined in the statute, nor has the Court's research revealed

3   Washington case law illuminating this inquiry.

4       In Washington, "[s]tatutory interpretation begins with the statute's plain meaning" and

5   courts must "construe statutes such that all of the language is given effect." *Lake v. Woodcreek*

6   *Homeowners Ass'n*, 243 P.3d 1283, 1288 (Wash. 2010) (citing *Rest. Dev., Inc. v. Cananwill, Inc.*,

7   80 P.3d 598 (2003)). "Where a statute does not define a nontechnical, but vitally important word,

8   [the Court] may look to the dictionary for guidance." *Seattle v. Williams*, 908 P.2d 359, 363

9   (Wash. 1995).

10

11      Merriam Webster defines "initiate" as "to cause the beginning of something." *Initiate*

12  *definition*, MERRIAM-WEBSTER.COM, http://www.merriam-webster.com/dictionary/initiate (last

13  visited January 26, 2015). Liability under the WADAD statute requires CallFire to have "caused

14  the beginning" of the calls received by Plaintiffs. The evidence does not support such a finding.

15

16      Plaintiffs rely on *Couser v. Pre-paid Legal Services, Inc.*, another case involving

17  CallFire, which conflated the concept of message "transmission" with message "initiation." 994

18  F.Supp.2d 1100, 1103 (S.D. Cal. 2014). The *Couser* opinion reads, in relevant part, "By

19  CallFire's own words, it receives numbers from its customers and it transmits or delivers a

20  recorded message to those numbers. That essentially makes it a caller, at least by some common-

21  sense definition of the term, even if the customers are the chief architect of the calls." *Id.*

22  (emphasis added). Taken as dicta, this assessment rushes through the analysis of what it means to

23  be considered a "caller" without citation. Message "initiation" and message "transmission" are

24  distinct concepts, particularly in assessing liability under statutes like the WADAD and the

25

26

1    TCPA.[3]

2          Furthermore, the *Couser* opinion involved resolution of a motion to dismiss. 994

3    F.Supp.2d 1100. The true holding of *Couser* was not that CallFire actually initiated calls, but that

4    "the true and exact relationship between CallFire and its customers is. . . too fact-intensive, and

5    certainly too disputed, to be resolved at the motion to dismiss phase. . ." *Id.* at 1103. In short, the

6    *Couser* opinion does not establish that message transmission is synonymous with message

7    "initiation."

8          The technical process by which CallFire receives and transmits data is fairly

9    sophisticated. When a CallFire customer creates a campaign, it builds a piece of code called an

10   SIP packet. Dkt. No. 94, Ex. 3, pp. 58–69 (Thinakaran deposition). The SIP packet contains the

11   directives from the customer regarding the message content, recipient's phone number, and the

12   timing of the call. Once the SIP packet is uploaded by CallFire, downstream carriers receive the

13   information via an SIP server and transmit the message. *Id.* at 59–60. Thinakaran describes, "It's

14   a very closed-end world. You could not go in and say to the carriers, 'I want to start transmitting

15   SIP packets.' You have to specifically be validated and say that you are a trusted carrier to be

16   able to transmit those packages downstream." *Id.* at 61. Plaintiffs argue that this generation of the

17   SIP packet and making it available to be received by downstream servers constitutes "initiating"

18   a call for the purposes of the WADAD and the TCPA.

19         However, none of the evidence put forth by either party establishes that the CallFire

20   process constitutes message "initiation" under the WADAD statute. Even the report of Plaintiffs'

21   expert, Jeffrey A. Hansen, describing the system used by CallFire, indicates that the CallFire

22

23

24

25   _____

26   [3] While *Couser* addressed the TCPA and not the WADAD, its discussion around what it means to be a "caller" is
     relied on by Plaintiffs as part of the legal question of message "initiation." As such, the Court addresses it here.

1  system is automatic in nature, belying the notion that CallFire "initiates" calls. Dkt. No. 91. Ex.

2  4, p. 5 (SEALED). CallFire transmits data after the process is initiated by its customers. As

3  confirmed by Defendant Gehrs, "the calls to Plaintiff Rinky Dink and Plaintiff Knott were

4  initiated by someone at EMS." <u>Gehrs Deposition 1</u> at 133.

5      CallFire did not initiate the calls received by Plaintiffs. The calls were indisputably

6  initiated by EMS and Gehrs. As such, CallFire's motion for summary judgment as to Plaintiffs'

7  WADAD claims is **GRANTED.**

8

9  **III.    CONCLUSION**

10     As a compelling reason has been put forth to preserve the confidentiality of (1) the Expert

11  Disclosure and Written Report of Plaintiff's Expert Jeffrey Hansen,[4] (2) CallFire's Response to

12  the FCC's letter of inquiry,[5] (3) CallFire's Response to the FTC's Civil Investigation Demand,[6]

13  and (4) the redacted portions of the deposition transcript of CallFire COO Jaggannathan

14  Thinakaran,[7] the motion to seal (Dkt. No. 89) is **GRANTED** in part.

15     Defendant CallFire is a common carrier exempt from liability under the TCPA.

16  Furthermore, CallFire did not "initiate" the calls made to Plaintiffs and cannot be found in

17  violation of the WADAD statute. For the foregoing reasons, Defendant CallFire's motion for

18  summary judgment (Dkt. No. 84) is **GRANTED.**

19  //

20  //

21  //

22

23

24  ─────────────

25  [4] Dkt. No. 94, Ex. 6; Dkt. No. 91, Ex. 4 (SEALED).
[5] Dkt. No. 94, Ex. 13; Dkt. No. 91, Ex. 13 (SEALED).

26  [6] Dkt. No. 94, Ex. 23; Dkt. No. 91, Ex. 23 (SEALED).
[7] *Compare* Dkt. No. 94, Ex. 3 *and* Dkt. No. 91, Ex. 3.

1   DATED this 24th day of February 2015.

2

3

4

5

6

7

8                                        John C. Coughenour
                                         UNITED STATES DISTRICT JUDGE
9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26